—o+c—

## CARTER *against* THE FIRST ECCLESIASTICAL SOCIETY OF CANTERBURY.

In *January,* 1811, the ecclesiastical society of *A.* voted, that the pews in their meeting-house should be sold, and conveyances thereof, executed, in a prescribed form, to the purchasers; that notes should be taken for the purchase money, bearing interest payable annually; and that, as soon as 5000 dollars should be raised, if raised before the 1st day of *September* then next, the sum so raised, should be established as a perpetual fund, for the support of the gospel ministry in the society, and the maintenance of an orthodox clergyman. The requisite sum was seasonably raised, by a sale of the pews. One of these *B.* purchased, received a transfer thereof, and gave his note, bearing interest, for the purchase money. In *October,* 1812, an orthodox clergyman was settled in the society, and the interest of the fund was duly applied to his maintenance. *B.* paid the interest on his note, for four successive years, which was applied to the uses for which the fund was raised. Shortly afterwards, the society put the note in suit, recovered judgment thereon before the county court, and obtained satisfaction, by the levy of the execution, on the real estate of *B.* In *January,* 1818, the society voted, that the notes taken for the sale of pews, should be given up to the makers, upon their paying the interest accrued, and reconveying their pews; and that the right of the society, acquired by the levy of execution, in the real estate of *B.*, should be released to him, on his re-conveying his pew. In pursuance of this vote, all the notes constituting the principal of the fund, except the note of *B.*, were given up. *B.* without offering to re-convey his pew, then brought *assumpsit* against the society for money received by them to his use. Held, 1. that satisfaction of the note having been obtained, by virtue of the judgment of a court of competent jurisdiction, still in force, the amount could not be recovered back in a collateral action; 2. that the note having been satisfied, by the setting off of real estate on execution, and not by payment in money, the action for money had and received would not lie; 3. that *B.* could entitle himself to redress, in no form of action, without re-conveying his pew; and 4. that the interest paid by *B.* on his note, could in no event be recovered back, as he paid it voluntarily, when justly due, and the society applied it to its legitimate use.

*October* 27.

*Windham,*
*October,*
*1820.*

*Carter*
*v.*
*Canterbury.*

THIS was an action of *assumpsit,* containing three counts. The first was general *indebitatus assumpsit,* for 183 dollars, 13 cents, had and received, by the defendants, to the plaintiff's use. The second count, seeking to recover the same sum, stated the circumstances of the case, specially. The third count was general *indebitatus assumpsit* for 36 dollars.

The case was as follows. At a legal society meeting, held on the 21st day of *January,* 1811, the defendants voted, that a committee appointed for the purpose, should sell 44 pews in the meeting-house, and execute proper conveyances, the form of which was prescribed, to the several purchasers. The committee were also directed to receive in payment, the note or notes of the several purchasers, to the amount of their respective purchases, payable to the treasurer of the society, with annual interest. The following votes were then passed : " *Voted,* that as soon as 5000 dollars shall be raised as aforesaid, by said committee, the same, together with any other sum, or sums, over and above said 5000 dollars, which may be raised as aforesaid, shall be, and the same is hereby established, as a perpetual, permanent and invariable fund, for the support of the gospel ministry in said society, the annual interest only whereof shall be applied, under the direction of the church and society, to the maintenance of a regular, well-informed, pious and orthodox clergyman, who shall be either a licenced candidate, to be employed in that capacity not exceeding nine months, or an ordained minister, to be approved, called and chosen, by a majority of said society, and who shall be in ministerial fellowship, &c. Provided, nevertheless, that said 5000 dollars shall be raised as aforesaid, by the 1st day of *September,* 1811."—" *Voted,* that the foregoing votes and resolves, be, and remain, unalterable, by any future vote of said society, after said 1st day of *September,* 1811, in case said 5000 dollars shall be raised by that period." More than that sum was, in fact, raised, in the way mentioned, by the time limited. On the 29th of *March,* 1811, the plaintiff purchased a pew ; of which the committee gave him a transfer, in the prescribed form ; and he, in consideration thereof, made and delivered to the committee, his note for 150 dollars, dated *March* 29th, 1811, payable to the treasurer of the society, on the 1st day of *April,* 1812, with interest payable annually, on every 1st day of *April,* thereafter. The plain-

tiff, paid the interest on this note as it became due, for four successive years, amounting to 36 dollars ; which was applied to the uses for which the fund was raised.   On the 1st of *February*, 1816, it was put in suit, and in *December*, 1816, judgment was rendered thereon, before the county court of *Windham* county, against the present plaintiff, for 165 dollars, 30 cents, damages, and for 8 dollars, 63 cents, costs, which, with the price of the execution, and the officer's fees thereon, made up the sum of 183 dollars, 13 cents, mentioned in the two first counts of the declaration.   On the 4th of *July*, 1817, the execution, issued on that judgment, was levied on the equity of redemption, in certain real estate of the plaintiff, which was regularly set off in satisfaction of such execution.   On the 12th of *October*, 1812, the Rev. *Asa Meech*, being a minister of the gospel, possessed of the requisite qualifications, was installed in and over said church and society, on a salary of 450 dollars ; which was duly paid to him from the interest of the fund, until *January*, 15th, 1818 ; when the defendants, at a legal society meeting, passed the following vote : " *Voted*, that any person, who is indebted to this society, by bond or note, for the purchase of pews, or parts of pews, in the meeting-house in said society, who have subscribed to the subscription-paper, and those, who may hereafter subscribe to the same, on the same conditions with those who have already subscribed to the same, upon paying up the interest that shall be due on their bond or note, to the 15th day of *January*, 1818, and releasing and conveying back to said society, the pews and parts of pews, for which such bond or note was given, the treasurer be directed to give them up their bond or note."   In pursuance of this vote, the treasurer, on the 1st of *April*, 1818, gave up and cancelled all the notes and obligations constituting the principal of the fund, amounting to more than 5000 dollars, except the note given by the plaintiff.   At the meeting last mentioned, the society also voted, and directed, that upon the plaintiff's re-conveying his pew to the society, the treasurer should release and reconvey to the plaintiff, all the right, title and interest, acquired, by the society, in the plaintiff's real estate, by virtue of the levy of the execution.   It did not appear, however, that the plaintiff had ever re-conveyed, or offered to re-convey

*Windham,*
*October,*
*1820.*

*Carter*
*v.*
*Canterbury.*

his pew to the society; nor that the society, on the other hand, had executed any release or re-conveyance to him.

Upon these facts, the judge charged the jury, that the plaintiff was not entitled to recover, and directed them to find a verdict for the defendants. The jury gave a verdict for the defendants accordingly; and the plaintiff moved for a new trial, on the ground of a misdirection.

*Stoddard* and *Judson,* in support of the motion. 1. The defendants having obtained satisfaction of the note given by the plaintiff, and having failed to comply with the conditions on which that note was given, the plaintiff is entitled to recover the amount in this action. The plaintiff is injured, by the misapplication of the fund; and the measure of that injury, is the sum subscribed by him. The general right of a party, to recover back money, which he has paid for a specific purpose, and which has been misapplied, is incontrovertible. If the plaintiff is precluded from a recovery, in this case, his defeat must result from some of the circumstances under which his claim is presented.

2. The circumstance that the plaintiff received a transfer of a pew in the meeting-house, which he still holds, does not affect his right of recovery. The sole object of the arrangement, was, to raise a fund for the support of the gospel ministry. The plaintiff, as a member of the society, had previously a right to the use of a pew. This was not what he gave his note for. Under the contemplated arrangement, he might have considered this appropriation of the use of a pew to himself, as of some value; but since that arrangement has been broken up, it is of no value. Now, all the members of the society, have equal right to the use of the pews.

3. The circumstance that the amount of the note given by the plaintiff, has been recovered from him, by virtue of the judgment of a court of competent jurisdiction, does not destroy his present claim. He does not impeach that judgment. He admits, that it was not only legal, but perfectly right and just, at the time it was rendered. He had given his note, on sufficient consideration; and there was, at that time, no reason why he should not be compelled to pay it. His claim is, that after the defendants had rightfully obtained satisfaction, they conducted in such a manner, as to render it unjust for them to re-

*Windham,*
October,
1820.

Carter
*v.*
Canterbury.

tain it.   The  plaintiff's cause of action  arose  *subsequent*  to the judgment.    If   the   defendants  are  permitted  to  take refuge behind this judgment, there  must be  a  failure of justice ;  for no error is apparent upon the record ; and the case furnishes no ground for a new trial, there being  no  mispleading, and no evidence of  facts, existing at the trial,  which have been since discovered.

4.  Does the circumstance that the defendants obtained satisfaction of their execution,  by a levy on real estate, and not by the actual receipt of money, preclude a  recovery ?   The execution was for money.    What they took, satisfied that  execution.    The law regarded it as equivalent to a  satisfaction in money :  it was  *money's worth*.   In  *Norris* v. *Napper*, 2 *Ld. Raym.* 1007. the form of  action was *assumpsit* for money received to the plaintiff's use ;  and *Holt*,  Ch. J., held,  that evidence of  the defendant's having  received a *horse*,  under certain special circumstances, for the plaintiff's use, maintained  the action ;  " for though the  defendant did  not actually receive the money, yet he received a satisfaction, which  was money's worth."   The cases of *Barclay* v.  *Gooch*, 2  *Esp. Rep.* 571.   *Beardsley* & al. v. *Root*, 11 *Johns. Rep.* 464. and *Floyd* v. *Day*, 3 *Mass. Rep.* 403. were determined upon  the same general principle.   At any rate, the objection is inapplicable to the second count, in which the  facts are stated specially, and are supported by the evidence.   It will not be claimed, that the actual receipt of  money, is the only  consideration for, or foundation of, an implied promise.[1]

5.  But if the plaintiff cannot recover the  principal of his note in this action, he is still entitled to recover  the  sum demanded in the third count.  This was received by the defendants *in money ;*  and it has never passed *in rem judicatam.*

*Goddard* and *Frost*, contra, contended, 1. That on the broadest principles of justice, the plaintiff  was not  entitled to the money, which he sought to recover.   The society wished to raise a fund.   What means had they ?   They owned a meeting-house, and they could sell the pews.   They  did sell them, and took notes from the purchasers.   The plaintiff bought one, and gave his note for the purchase money.— Whose property was the money thus secured ?   Did it not belong to the society ?   Had not the society a  perfect right to

*Windham,*
*October,*
*1820.*

Carter
*v.*
Canterbury.

manage it, and dispose of it, at their pleasure? But to remove all ground of complaint, the society voted to give him up the proceeds of his note, on his re-conveying his pew. This he refused to do. Does justice require, that he should have his pew and money both?

2. But the question, To whom does this money belong? is not *open* now. The defendants demanded it, in their suit on the note; and it was awarded to them, by the judgment of a court of competent jurisdiction. That judgment remains in force. The plaintiff's claim is in direct opposition to it. If *that* stands, *this* must fail; if *this* succeeds, it will prostrate *that.* That a judgment cannot be thus attacked, is a doctrine too well established, at the present day, to require argument, or the citation of authorities.

3. If this obstacle were removed, the plaintiff, at the next step, would meet with another. He has brought his action for money, received by the defendants, to his use. Now, the fact is, the defendants have received no money to his use. They have, indeed, had an equity of redemption set off to them, which they have offered, and are willing to relinquish, to the plaintiff, upon his re-conveying his pew; but an equity of redemption is not money, nor does it afford any presumption, that the defendants have received money, to the plaintiff's use; and consequently, it does not support the action. *Nightingal* v. *Devisme,* 5 *Burr.* 2589. 2592.

4. As to the money sought to be recovered in the third count, there is not even a shadow for the claim to rest upon. It was voluntarily paid by the plaintiff, and was applied by the defendants, to the use for which it was paid, before any change had taken place in the application of the fund.

PETERS, J. It appears by the motion, that on the 21st day of *January,* 1811, the defendants agreed, by vote, to sell the pews in their meeting-house, prescribing the form of conveyance to be given, and the security to be taken, and appropriated the avails, so soon as 5,000 dollars should be raised, if raised before the 1st day of *September,* then next, as *a perpetual, permanent and invariable fund,* for the maintenance of the gospel, and an orthodox minister; that the requisite sum was seasonably raised, by a sale of the pews, whereof the plaintiff became a purchaser of one, and therefor gave his note,

dated *March* 29th, 1811, for 150 dollars, payable to the treasurer, on the 1st day of *April*, 1812, with interest annually; which interest, amounting to 36 dollars, was regularly paid, by the plaintiff, until the 1st day of *February*, 1816, when the note was sued, judgment obtained, and execution taken out, and satisfied on the real estate of the plaintiff; that in *October*, 1812, an orthodox minister was settled in the society, and the interest of the fund duly applied to his support, until *January*, 15th, 1818, when the defendants voted to change the mode of supporting the minister, and give up the notes received, for pews sold, on the purchasers' paying the interest accrued, and releasing the pews to the society.

Upon these facts, the plaintiff, by the two first counts in his declaration, claimed to recover the amount of the execution, obtained against him by the defendants, and the sheriff's fees thereon; and by the third count, the amount of interest paid on his note. But the court directed the jury to find for the defendants.

To entitle the plaintiff to a verdict, the case of *Moses* v. *Macferlan*, 2 *Burr.* 1005. must be revived. But the authority of that case, has been too often shaken, to have any weight at the present day. *O'Harra* v. *Hall*, 4 *Dall.* 340. Though the principles, relating to *indebitatus assumpsit*, so luminously illustrated in *Moses* v. *Macferlan*, have been universally recognized, their application to that case, has been generally reprobated, by the Bench, as well as the Bar. In that case, money obtained from the plaintiff, pursuant to a judgment of a court, then in force, was recovered back, on proof of facts *dehors* the record, whereby it appeared, that the defendant, *ex æquo et bono* ought not to retain it. This has been considered as an over-haling or impeaching of a judgment, indirectly. But Lord *Mansfield* himself, in that very case, informs us, " that the merits of a judgment cannot be overhaled, by an original suit, either at law, or in equity. Till the judgment is set aside, or reversed, it is conclusive, as to the subject matter of it, to all intents and purposes." *P.* 1009. How, then, could it be against conscience, for *Macferlan* to retain this money, thus awarded to him, by a court of justice, merely because he had violated his agreement, for which he was liable in damages, but not to refund the money he had recovered. Well might he have said "*Non in hæc fædera veni.*"

*Windham,*
October,
1820.

*Carter*
*v.*
*Canterbury.*

In *Marriott* v. *Hampton,* 7 *Term Rep.* 269. where the plaintiff, having paid a debt, and taken and *lost* a receipt, was sued, and obliged to pay it again, but afterwards finding the receipt, he brought *assumpsit* for the money; Lord *Kenyon* was of opinion, that after a recovery by process of law, there must be an end of litigation; that money paid under such process, could not be recovered back, how unconscientiously soever retained.

The case of *Philips* & al. v. *Hunter* & al. in err. 2 *H. Bla.* 402. has been supposed to establish a contrary doctrine. But that case was decided on the principles of the bankrupt laws, regardless of *Moses* v. *Macferlan.* Lord Ch. J. *Eyre* thought, that no other decided case countenanced such an action, and combated it forcibly and conclusively. "Shall the same judgment," said that learned Judge, "create a duty for the recoveror, upon which he may have debt, and a duty against him, upon which an action for money had and received, will lie? This goes beyond my comprehension. I believe, that judgment did not satisfy *Westminster-Hall,* at the time: I never could subscribe to it; it seemed to me to unsettle foundations." *P.* 416. Though this was the opinion of one judge only, it has since been quoted with approbation, by Ch. J. *Kent,* on delivering the opinion of the court, in *Smith* v. *Lewis,* 3 *Johns. Rep.* 157. and following, *haud passibus æquis,* the example of Lord *Ellenborough,* in *Imlay* v. *Ellefsen,* 2 *East* 453. and of the supreme court of *New-York,* in *Smith* v. *Spinolla,* 2 *Johns. Rep.* 198. I have no hesitation in saying, that it is the better opinion, and is to be adopted as law.

But this is not the only objection to the plaintiff's recovery. The defendants have received no money as the avails of their judgment: they have only acquired a title to real estate, of which the plaintiff may divest them, on a proper application to the proper court. This is a novel attempt to convert land acquired by execution, into money had and received; and it may be added, as a conclusive answer to the plaintiff's claim, that he retains the pew for which the note was given; the consideration of which has not failed, and, therefore, could not be recovered back, even if it had been in money.

With respect to the money claimed in the third count, it was voluntarily paid by the plaintiff, on his own note, then

justly due, and has been appropriated, and applied, by the defendants, to the use for which it was intended, by the plaintiff.

I would not advise a new trial.

The other Judges were of the same opinion, except Hos-MER, Ch. J., who, not having heard the case argued, gave no opinion.

New trial not to be granted.