# WHEELING.

## MATTINGLY *v.* SUTTON *et al.*

Submitted August 17, 1880.    Decided December 2, 1881.

*(PATTON, J., Absent.)

1. A principal, who is insolvent, according to the principles governing courts of equity cannot collect a debt, which the surety owes him, without first indemnifying the surety.

2. A surety generally in equity has in respect to his liability the rights of a creditor; and upon the insolvency of the principal debtor he may retain any funds belonging to such debtor by way of indemnity against his liability.

3. The assignees of an award made by arbitrators upon a reference made by a consent-order of the court in a pending case of the principal against his surety, and upon which award judgment is entered by the court, in which the case is pending, in favor of such principal against his surety for the amount of such award and costs of suit, stand in no better condition, as against the equities of the surety for indemnity or his right to apply the amount of such judgment to his relief as such surety upon a liability incurred by him as such surety prior to said award, than the principa.

4. In such case a court of equity under circumstances may, when the principal is insolvent, award an injunction to restrain the collection of such judgment on the application of the surety, though the surety has not paid the debt, for which he is such surety ; and under circumstances the court may perpetuate such injunction.

5. In such case it would be error to dissolve the injunction, unless it appeared, that the principal had discharged and satisfied the liability of the surety or procured the release and discharge of his surety from such liability in any event.   See statement of this case and opinion of the court as to the application of the principles above declared.

6. And in such case, when it appears to the court, that the surety has paid and discharged his liability as such surety, and that the amount so paid by him is equal to or greater than the judgment of his principal against him, the court should offset the amount so paid by the surety against the judgment of his principal against him and should perpetuate the injunction.

7. *Quœre:* If the surety incurs his liability as such, after his debt to the principal has been incurred, and after his principal has assigned the debt to a third person for value, and after the surety has notice of such assignment, would the surety in such case be entitled in equity to any relief because of such liability as surety as against such assignees of his principal?

*Cause submitted before JUDGE P. took his seat.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, pronounced on the 13th day of April, 1878, in a cause in said court then pending wherein William H. Mattingly was plaintiff, and Hiram Sutton and J. G. Mc-Luer were defendants, allowed on petition of said Mattingly.

Hon. C, C. Cole special judge pronounced the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

This is a bill of injunction filed in the circuit court of Wood county.   The plaintiff alleges, that one T. R. Barrett obtained a judgment against the defendant, Sutton, before a justice of the peace of Wood county, for $100.00 with interest and costs of suit; that Sutton desiring to appeal from said judgment to the county court of said county requested plaintiff, who was at that time indebted to Sutton, to become Sutton's security in an appeal-bond to enable him to obtain such appeal; that Sutton at the time of requesting plaintiff to become such security represented to plaintiff, that he was not indebted to the said Barrett, and that if he could obtain an appeal, he would upon the trial of the appeal defeat the said Barrett in said suit; and further stated, that plaintiff would incur no additional liability, as plaintiff being indebted to him, Sutton, in the amount at least of any recovery, that said Barrett might have against him, Sutton, which would be in plaintiff's hands until the said suit upon the said appeal could be determined, and that should said Barrett succeed in said suit, then plaintiff could apply such indebtedness to the discharge of the judgment in favor of Barrett in said appeal; that relying on said representations and promises of said Sutton plaintiff did sign said appeal-bond with the said Sutton in due form of law, before said justice as the security of said Sutton ; that an appeal was thereupon granted said Sutton by said justice to the said county court from the said judgment of Barrett against said Sutton; that said appeal was duly docketed in the said county court, and that while the same was pending, the said court by an order entered of record, by consent and agreement of the parties at ———— term, 1877,

ordered, that the matter in controversy in said suit be submitted to W. H. Taylor, Ransom Rector and James Cooper, to arbitrate and determine, and their award to be entered up as the judgment of the court in said appeal; that the said arbitrators had the matter in controversy on said appeal before them, and having fully heard the said parties together with the testimony on the — day of October, 1877, made their award, and filed the same in the said county court in the papers of said cause, by which said award the arbitrators determined, that the said Barrett recover of the said Sutton the sum of $100.00; with interest from the 1st day of July, 1877, and the costs of said arbitration, which the said arbitrators ascertained to be $44.90; that plaintiff is advised, that at the next term of the said county court a rule will be awarded against said Sutton to show cause, why the said award shall not be entered up as the judgment of said court; that he is advised, that on the return of such rule the said court will enter judgment upon said award for the amount thereof against said Sutton and plaintiff, his surety in said appeal-bond, unless good cause is shown against said award, which plaintiff is advised and believes cannot be shown; that notwithstanding the liability of plaintiff on said appeal-bond as surety for said Sutton, and notwithstanding the representations of the said Sutton to plaintiff in reference to the indebtedness of plaintiff, the said Sutton instituted his action at law in the circuit court of said county to recover from plaintiff the amount of said indebtedness, and such proceedings were had in said suit of said Sutton against plaintiff, that the said circuit court at the September term, 1877, rendered a judgment in favor of said Sutton against plaintiff for the sum of $105.85 with interest thereon from the 4th day of September, 1877, until paid and costs, to wit, $62.45; that said Sutton on the 22d day of October, 1877, sued out of the clerk's office of said circuit court a writ of *fieri facias* on said judgment returnable to December rules, 1877, of said court, which said writ has come to the hands of the sheriff of said county; that by an endorsement made on said execution-book of said circuit court it appears, that $40.00 of said judgment is assigned to one J. G. McLuer.

The plaintiff charges, that said Sutton and McLuer are seek-

ing to enforce the collection of said execution against plaintiff, and that the said Sutton was at the time of signing said appeal-bond, long before, ever since and still is wholly insolvent; that he knew the said Sutton was insolvent, at the time he signed the said bond, and he would not have signed it, had it not have been for indebtedness to said Sutton at that time and the agreement of said Sutton, that plaintiff would not be called upon to pay the same, until the matter of said appeal was heard and determined, &c.; that said Sutton being wholly insolvent, when judgment shall be rendered on said award against plaintiff as security, he will be compelled to pay the same, as neither the judgment when so rendered nor any part thereof can be made out of said Sutton.

The said Sutton and McLuer are made parties defendant to the bill; and the bill prays an injunction to restrain further proceedings on said Sutton's execution. The bill also prays, that should judgment be rendered in said suit of Barrett against plaintiff as surety by the said county court, plaintiff be decreed to apply so much of the debt due by him to said Sutton in discharge of such Barrett judgment, as will be sufficient to pay the same, and for such further general relief in the premises, as is equitable and right.

The defendant, Sutton, filed his answer to the bill, in which he admits, that said Barrett obtained judgment against him for the sum of $100.00 with interest and costs, and that he appealed from the decision of the justice, who rendered the judgment, to the county court of Wood county, and that he told plaintiff, when he requested him to sign the appeal-bond, that he (Sutton) felt assured, that he would prevail in the cause of Barrett against him; but he denies, that he had any agreement, as alleged in the bill, that he (plaintiff) could retain any amount due him (Sutton) in plaintiff's hands, until the suit upon said appeal could be determined; and he says, that not a word was said by either plaintiff or him (Sutton) at that time or at any time previous to the signing of said appeal-bond by plaintiff about the indebtedness of plaintiff to him (Sutton), and that whenever the subject of a settlement between plaintiff and him (Sutton) was broached by Sutton, plaintiff would deny owing him anything except the sum of $12.50, and said he had a claim of $50.00 or more, which he

paid for him (Sutton) to offset the $12.50, which amount he said was correct. Sutton admits substantially the allegations of the bill as to the reference of said appeal-cause to arbitrators and the award of the arbitrators and the amount thereof; but he says, he does not and has not acknowledged, that the said judgment of the arbitrators was or should be final; that there has been no rule awarded against him by said county court to show cause, why the said award should not be entered up as the judgment of the court. He also says, that when such rule is awarded, upon receiving the same he is ready to and will show cause, why the same shall not become the judgment of the court. Sutton substantially admits the allegations of the bill in relation to his suit in said circuit court for his claim; but he says, that by order of said circuit court the matters in controversy in his said suit against the plaintiff were referred to John W. Mitchell, Benjamin T. Beeson and A. K. Leonard, who after hearing the evidence pro and con. gave judgment in favor of him (Sutton) for the sum of $105.85 with interest and costs, as stated in the bill. Sutton also says in his answer, that on the day the arbitrators in his case against plaintiff made their said award, he (Sutton) assigned to said McLuer the sum of $40.00, as per understanding between himself and said McLuer, for attorney's fees in cases, in which the said McLuer had acted for him (Sutton), including his, McLuer's, fee in the said case of Sutton against Mattingly. Sutton also says, that it is true he is poor; but he has been and is still willing and able to pay his just debts; and should the said Barrett finally prevail in his suit against him upon said appeal, he is able to and can and will pay the same. He insists, that plaintiff cannot offset against his (Sutton's) judgment, until plaintiff has first paid said Barrett's judgment, &c.

McLuer filed his answer, in which he admits the assignment to him of $40.00 of said judgment against plaintiff by said Sutton for value, &c.; and he says, he did not know, that plaintiff had any claim of an agreement with Sutton, as stated in his bill, as an inducement offered by Sutton to secure his name as security on said appeal-bond; that before the trial of Sutton and plaintiff he, McLuer, had frequent talks with plaintiff, in none of which did he state to him, McLuer, that there had been an agreement between them, as claimed in his

bill of complaint, but on the contrary claimed, that he did not owe Sutton one cent, but that Sutton owed him over $50.00 and had owed him the amount ever since he was sheriff of Wood county; that he accepted the said assignment of the $40.00 aforesaid in full of all claims against said Sutton and gave him credit on his books for that amount.

James M. Jackson filed his petition in the cause, in which he alleges, that by a written assignment made by said Sutton to him on the 4th day of September, 1877, he, Sutton, assigned to him for value all of said judgment against Mattingly except $40.00 thereof assigned by him to J. G. Mc-Luer, all of which he says, appears by said written assignment filed with said petition marked A.; and he alleges, that said assignment is valid and binding, that said Mattingly has no equity against said assignment, that he has paid no part thereof. He therefore prays, that the injunction be dissolved and the bill dismissed. He asks leave to file his petition, &c. Said exhibit A. in said petition mentioned and its purport is as alleged in said petition.

The plaintiff took and filed his own deposition in the cause, in which he proves all the material allegations of his bill including the insolvency of said Sutton, as alleged in the bill.

The defendants took and filed the depositions of said Mitchell, Leonard and Beeson, the arbitrators in the case of Sutton against plaintiff. Mitchell in his deposition says, that plaintiff gave evidence in his own behalf before said arbitrators; that to the best of his recollection he, Mattingly, stated, that he did not owe Sutton anything at that time; that he had loaned Sutton money to enable him to get his "hacks" from the wagon-shop, for which loan Sutton confessed judgment; that he loaned him, Sutton, $60.00, and Sutton confessed judgment for $100.00; and plaintiff claimed, that Sutton owed him enough outside of the $60.00 to make up the $100.00; that to the best of his recollection plaintiff did not say anything at that time about his having become surety for Sutton on an appeal-bond of *Barrett* v. *Sutton.* Leonard testifies substantially the same as Mitchell. Beeson testifies, that plaintiff in giving evidence before said arbitrators said, he did not owe Sutton anything, but he believed upon a fair settlement Sutton would owe him $50.00, as he, witness, understood

it, this was to bring it up to the time of the arbitration; that he don't recollect, what he did say about his indebtedness before the arbitration, if anything; that there was nothing said about an appeal-bond of Barrett, as he, witness recollects. If such a thing had been mentioned, he thinks he would recollect it. On cross-examination this witness states, that the arbitration was upon the true state of the account between Sutton and plaintiff.

The said appeal-bond or an official copy is filed in the cause as an exhibit and is in the penalty of $200.00 and conditioned according to law. The said award in the said case of Barrett against Sutton is also in the record as an exhibit; and in and by it the arbitrators substantially award, that the plaintiff, Barrett, recover of the defendant, Sutton, the sum of $100.00 with interest from the 31st day of July, 1875, the date of the judgment theretofore rendered by the justice in the cause, and also the costs by him about his suit expended, and adjudges and awards, that the said judgment of said justice be affirmed. The award is dated October 17, 1877.

It appears by the record, that judgment was rendered for said Barrett by said county court against said Sutton and said William H. Mattingly, the plaintiff his surety, at the February term thereof for $100.00 with interest thereon from the 31st day of July, 1875, and costs of the suit, which are $76.50; that the said judgment is for the same matter set out in plaintiff's bill in this cause, and was rendered by the said county court since the filing of said bill and since the writing of the answer of defendant, Sutton, filed in the cause; that the said judgment was unsatisfied and the plaintiff was still liable therefor. It further appears by the record, that the said judgment of said circuit court in favor of Sutton against the plaintiff is for $105.85 with interest from the 4th day of September, 1877, and costs $62.45, and that *fi. fa.* issued thereon on the 22d of October, 1877, returnable to December rules, 1877. It further appears, that on the 13th day of April, 1878, at a circuit court continued and held in and for said county of Wood a decree was rendered and entered in this cause as follows:

"This day James M. Jackson filed his petition in this cause setting forth, that he holds an assignment from the de-

fendant, Hiram Sutton, of the residue of the judgment in this cause mentioned in favor of said Sutton against said Mattingly, and praying to be made a party defendant in this cause to enable him to protect his interest under said assignment. Upon consideration whereof it is ordered, that said petition be filed, and that said Jackson be made a party defendant to this suit, which is accordingly done ; and thereupon this cause came on to be heard by consent of the said parties, by their attorneys, and by consent of said James M. Jackson in person upon the bill and exhibits therewith filed, the separate answers of the defendants, Sutton and McLuer, and the depositions taken by consent of both parties, and the petition of the said Jackson with the exhibit therewith filed, and the execution of said assignment by said Sutton to said Jackson, was admitted by the parties by their counsel; and was argued by counsel. Upon consideration the court is of opinion, that the complainant is not entitled to the relief prayed for. It is therefore adjudged, ordered and decreed, that the injunction heretofore granted in this cause be and the same is hereby wholly dissolved, and that the complainant's bill be dismissed, and that the defendants recover of the complainant their costs by them about their defence in this behalf expended, the defendants waiving any attorney's fee."

From and to this decree the plaintiff has heretofore obtained an appeal and *supersedeas.*

*John A. Hutchinson* for appellant cited the following authorities: 2 Story Eq. Juris. §§ 1431–1436 ; 2 Rob. (old) Pr 144; 2 P. Wms. 129 ; 5 Mason 207; 2 Lead. Cas. in Eq. (4th Am. ed.) 1345; 11 Harris 166 ; 1 Jones Eq. 328 ; 6 Gratt. 310 ; 2 Paige 581 ; 2 Sim. (Eng. Chy.) 461; 14 Johns, 62 ; Brandt Suretyship § 196 ; 1 Freem. Chy. (Miss.) 273 ; 1 Dev. Eq. (N. C.) 151.

*Walter S. Sands* for appellees cited the following authorities: 2 Sumn. 471 ; 4 Yeates 461 ; 4 Md. Chy. 13; 1 McCord 7 ; 2 McCord 185 ; 3 McCord 249; 1 Stew. & P. 19 ; 1 A. K. Marsh. 41 ; 65 N. C. 406 ; 43 Miss. 288; 43 Vt. 400 ; 43 Conn. 155 ; 28 Wis. 254; 29 Wis. 541; 3 Johns. Chy. 357; 3 Leigh 667 ; 6 Rand. 519.

HAYMOND, JUDGE, announced the opinion of the Court:

A case of the application of the remedial justice of courts of equity is by bill *quia timet* in cases of sureties of debtors and others. If a surety, after the debt has become due, has any apprehension of loss or injury from the delay of the creditor to enforce the debt against the principal debtor, he may file a bill of this sort to compel the debtor to discharge the debt or other obligation, for which the surety is responsible. 2 Story Eq. Jur. §§ 730, 849. The insolvency of one of the parties is a ground, upon which a bill may sometimes be maintained for a set-off, when it clearly appears, that in consequence of such insolvency the complainant can have no adequate remedy at law. 2 Rob. (old) Pr. 144; *Simson* v. *Hart*, 14 Johns. 63; *Lindsay* v. *Jackson et al.*, 2 Paige 581. In the last named case it was held by the court, that equity requires, that cross-demands should be set-off against each other; and in a case not within the statute of set-off chancery will permit an equitable set-off, if from the nature of the claim or the situation of the parties justice cannot be obtained by cross-action; also that insolvency of one of the parties is a sufficient ground for the court to exercise its equitable jurisdiction in allowing an equitable set-off; and also that a set-off will be allowed on the application of the complainant, where the defendant is insolvent, although the debt of the complainant to the defendant is not due.

In the first named case it is said, the fact, that the notes due from the complainant to the defendants had not become payable, could form no objection to the relief sought; for there could be no injustice in compensating the defendants at once the whole amount to become due to them at a future day. The question is somewhat different where the claim of the complainants against the defendants is payable at a future day, and they seek to make this claim compensate a debt already payable from the defendants; then a court of law cannot allow a set-off. *Young* v. *Gye et al.*, 10 J. B. Moore 198, (17 Eng. Com. Law Rep. 139.) Yet even in a case of that kind equity will give relief. 2 Rob. (old) Pr. 144.

In the case of *Ford's adm'r* v. *Thornton*, 3 Leigh 695, it appeared, that Ford and Thornton were endorsers of a note at

sixty days, made by Gregory and discounted for his accommo-
dation by the Bank of Virginia. Gregory died before the
note became payable, having at the time of his death a sum
of money in bank exceeding the amount of the note. When
the note became payable, there being no administration of
Gregory's estate, Ford and Thornton retired the note by giv-
ing their own note with an endorser for the same sum at sixty
days, which the bank discounted for their accommodation.
Before the last mentioned note came to maturity, administra-
tion was granted on Gregory's estate; and then the question
was, whether the money in bank should be appropriated to
the indemnity of Ford and Thornton or applied in satisfac-
tion of debts of superior dignity. The Court of Appeals was
of opinion, that no part of Gregory's deposit in bank consti-
tuted upon his death general assets of the estate, except the
excess above what was sufficient to liquidate the note of Greg-
ory due to the bank; that although the debt due the bank
might not have become payable at the time of Gregory's
death, yet if he was insolvent, the bank might have insisted
in equity, that the note due to it should be set off against the
claim to the money on deposit; Ford and Thornton having
taken up Gregory's note, they had a right to stand in the
shoes of the bank and have the deposit applied to their indem-
nity. See on this subject *Miller* v. *Receiver of Franklin Bank,*
1 Paige 444; *In re Receiver of Middle District Bank, Id.*
585; *McLaren* v. *Pennington, et als., Id.* 102; Rob. (old) Pr.
145.

In the case of *Hupp* v. *Hupp,* 6 Gratt. 310, according to
the syllabus it was held : " H. and N. are merchants and part-
ners. H. sells out to M.; and the new firm undertake to pay
the debts of the first. H. becomes indebted to the new firm,
for which he executes his bond with two sureties; and this
bond is assigned for value to A. The new firm afterwards
fails, and the partners are insolvent, leaving debts of the old
firm unpaid to a larger amount than the bond of H.; and H.
pays them. *Held :* H. is entitled in equity to set off against his
bond in the hands of the assignee the debt of the old concern
of H. & N., which M. & N. were bound to pay, and which H.
had paid."

In the case of *Beaver* v. *Beaver,* 23 Pa. St. 167, it was held :

" In a suit by administrators of an *insolvent* estate the defendant is entitled to credit for a payment by him of a note, in which he was surety for the decedent, though paid by the defendant since the institution of the suit. The case of *Bosler's adm'rs* v. *The Exchange Bank*, 4 Barr 32, in effect overruled."

In *Thompson* v. *McClelland*, 29 Pa. St. 475, it was held : " An action on a due-bill not negotiable assigned to a third party long after its date is to be regarded as between the original parties without reference to the use-man, and subject to every legal set-off the maker may have against the payee. In such case he may set off the amount paid on a judgment as surety of the legal plaintiff, who was insolvent, although such payment was made after suit brought, the judgment having been entered and being due before the commencement of the action."

In *Brittain* v. *Quiet*, 1 Jones Eq. (N. C.) 328, it was held : " The rule, that a party must establish his claim at law, before he can come into equity, is confined to cases, where a creditor seeks the aid of a court of equity in the collection of his debt on the ground of imposing on an equitable interest the liability, which would attach at law on a corresponding legal interest. It does not apply to the case, where a surety has paid money for his principal and seeks to enjoin an execution on a judgment against him in favor of such surety, the latter being out of the State and insolvent. In such a case the surety is entitled to relief, though he did not pay the money, until after the suit against him had been commenced, and therefore could not have pleaded it at law as a set-off.

In the case of *Williams's Adm'r* v. *Helme et al.*, 1 Dev. 151 it was held :  " A surety has in respect to his liability the rights of a creditor, and upon the insolvency of the principal debtor may retain any funds belonging to him in his hands. Therefore when the surety owed the principal debtor, who became insolvent and assigned for value the debt due by the surety, it was held, that the latter might retain the amount of his subsequent payment against the assignee. In this case the judge, who delivered the opinion of the court, at pp. 159, 160 says:   "I do not know a plainer equity.   Indeed it was admitted in the argument, that if *Williams* had before the as-

signment actually suffered, he would be entitled to the relief, which he asks.  Or if he had before the assignment applied to this Court to restrain *Helme* from transferring, that then the assignment would not avail, as it would have been made in violation of an order of the court.  Williams has other equities besides those arising from actual sufferings.  As a surety he has a right to have his fears and apprehensions quieted, to be made safe from apprehended harm.  He need not wait, till he has suffered, because his equity arises before that time ; and this seems to be admitted in that part of the argument, which rather concedes, that he might have obtained an order, that *Helme* should not assign.  And as to the position, that *Williams* should have applied to a court of equity to restrain *Helme* from transferring, I think, that his equity is higher than any, which could arise from the violation of orders or rules of court.  It is independent of them—it arises from the principle first mentioned, that *Helme* could neither by himself nor by another require of *Williams* to do, what he, Helme, was unable to do towards him from the fact of his insolvency. *Williams* being indebted to him was also bound for him in a very large sum, from which he sustained a loss of double the amount of the sum, which *Williams* owed.  The debt, which the plaintiff owed, should have been left in his hands as an indemnity in part for his loss.  It is true, that if the judgment had been of a negotiable character, it would have been proper to have applied to a court to restrain its negotiation ; for had it been of that character, *Williams* might have had a legal owner to contend with, one who stood upon his own rights instead of those of another—and who would not as these defendants represent the original creditor and be bound by every obligation, which was imposed upon him," &c.

A present equitable demand may be set off, although it is not a legal cause of action ; and as a surety may equitably require the principal to pay the debt, as soon as it matures, so he may file a bill to compel the appropriation of an amount, which he owes the principal, to discharge the obligation to the creditor.  For like reasons a payment by the surety to the creditors may be set off in an action by the principal against the surety, although not made until after suit brought. *Thompson* v. *McClelland*, 29 Pa. St. 475 ; *Beaver* v. *Beaver*, 23

Pa. St. 166; *Brittain* v. *Quiet*, 1 Jones. Eq. 328; 2 Lead. Cas. in Eq. (White & Tudor 4 Am. ed.) 1345. A principal, who is insolvent, cannot collect a debt, which the surety owes him, without first indemnifying the surety. A surety has in respect to his liability the rights of his creditor as against his principal; and upon the insolvency of the principal debtor he may retain any funds belonging to such debtor by way of indemnity against his liability. Otherwise a surety in such a case would be wholly without remedy, when the plainest principles of justice are in his favor. The assignee of a judgment obtained by the principal against the surety will in such case stand in no better position than the principal. Brandt on Suretyship and Guaranty 278.

In the case of *Abbey* v. *Van Campen*, administrator, 1 Freeman's Chancery R. 273, it was held : "A court of equity will not permit a plaintiff at law to enforce against the defendant the collection of a debt, when the defendant stands as surety for the plaintiff to an amount greater than that sued for, unless the plaintiff will fully indemnify the defendant against his liability as his surety, more especially if the plaintiff is shown to be insolvent. A surety has in respect of his liability the right of a creditor as against his principal, and upon the insolvency of the principal debtor he may retain any funds belonging to such debtor by way of indemnity against his liability." In this case the surety filed his bill in chancery to restrain the collection of a judgment at law against him in favor of the administrator of his principal, until the notes, on which he was surety, were paid." The injunction was granted. The Chancellor in his opinion in the case on pp. 274, 275, says: "This case was submitted on a motion to dissolve the injunction therein. The answer does not deny the agreement, upon which, I conceive, the equity of the bill rests. Here there is an express agreement, by which Abbey was at liberty to withhold the payment of the note for one thousand dollars, upon which he is sued, until Dickinson should release him from his liability on notes made by Dickinson and endorsed for his accommodation by Abbey. This is certainly such an agreement between principal and surety, as a court of equity would enforce for the protection of the latter. The allegation of the bill on this subject is not denied and therefore stands

admitted on a mere motion to dissolve. I entertain no doubt however that Abbey would upon well considered principles of equity have been entitled to the relief, which he asks, even independent of the agreement set up by the · bill, if the suit had been brought by Dickinson in his lifetime against him. A court of equity would not permit a plaintiff at law to enforce against the defendant the collection of a debt, when the defendant stood as surety for the plaintiff to an amount greater than that sued for, unless the plaintiff would fully indemnify the defendant against his liability as his surety, and especially if the plaintiff were shown to be insolvent. It would be rank injustice to permit a principal to collect a debt from his surety and at the same time leave his surety to pay a debt for him without the most distant hope of reimbursement. A surety has in respect to his liability the rights of a creditor *as against his principal;* and upon the insolvency of the principal debtor he may retain any funds belonging to such debtor by way of indemnity against his liability; otherwise a surety in such a case would be wholly without remedy, when the plainest principles of justice ·are in his favor. The cases of *Williams, adm'r* v. *Helm et al.*, 1 Dev. Eq. R. 151, and *Battle* v. *Hart*, 2 Dev. Eq. R. 31, are fully in support of this view of the case."

In the case last referred to (2 Dev. Eq. 31,) it was held. that " upon the insolvency of the principal debtor a surety is considered in equity as a creditor, and may retain against an assignee for value and without notice any funds of the principal, which he has in his hands."

As we have seen, in the case at bar the debt, for which the defendant Sutton obtained judgment against the plaintiff, was owing from the plaintiff to Sutton, at the time when the plaintiff became surety for Sutton in the appeal-bond made to enable the plaintiff to obtain an appeal from the judgment of the justice in the case of *Barret* v. *Sutton*, and by means of said appeal-bond Sutton did obtain an appeal from the judgment of the justice to the county court of said county of Wood. The condition of that appeal bond is, that " whereas the above bound Hiram Sutton has appealed from the decision of William Cook, a justice of the peace of Wood county, West Virginia, in a certain action before him, in which

Thomas Barrett is plaintiff, and the said Hiram Sutton is defendant. Now, if the said Hiram Sutton will perform and satisfy any judgment, which may be rendered against him on such appeal, then the above obligation to be void, else to remain in full force and virtue." It appears, that after said appeal was taken to the county court by Sutton, that case was by the consent of said Barrett and Sutton by order of court referred to arbitrators, their judgment to be entered up as the judgment of the court. This consent-order was made at the —— term 1877 of the county court. The judgment of the justice appealed from was in favor of Barrett against Sutton for $100.00 with interest and the costs. The arbitrators, to whom the appeal case was referred, made their award on the 17th day of October, 1877, and in and by their award they awarded in substance, that the said Barrett recover of the defendant, Sutton, the sum of $100.00 with interest thereon from the 31st day of July, 1875, the date of the judgment rendered by the justice in the cause, and also the costs of suit, and that therefore the judgment of the justice be affirmed. It appears, that at the time the injunction was obtained in this cause by the plaintiff, said award had been returned by the arbitrators and filed with the papers of the said appeal-case. This being so, the said award being valid on its face *prima facie* fixed the liability and the amount thereof of the plaintiff as the surety of said Sutton on said appeal-bond, because *prima facie* there was nothing left for the county court to do in the case (after a suit against said Sutton) but to enter judgment upon said award against said Sutton and the plaintiff, his surety, jointly. Under the 126th section of chapter 226 of the Acts of the Legislature of 1872-3 the judgment of the county court in appeal-cases, where the appellee prevails, is rendered against the appellant and his security for the sum due, including interest and costs.

The plaintiff in his own deposition taken in his own behalf fully sustains the allegations of his bill in relation to an agreement or understanding between him and said Sutton made by them, before plaintiff signed said appeal-bond, if he is to be believed. It is proper to remark, that the deposition of said Sutton was not taken in the cause for some reason. If the statements of the plaintiff contained in his deposition in re-

lation to said agreement with Sutton were untrue in whole or in part, Sutton must have been cognizant of the fact and was competent to so testify. It seems to me, that under the circumstances and evidence I am not authorized to say, that the evidence of plaintiff touching said agreement is false and should nor receive credit. Still if there was no agreement between the plaintiff and the defendant, Sutton, of the character claimed, I am of the opinion under the facts appearing and the authorities I have cited, that it was proper just and equitable to grant the injunction awarded in this cause, although it was awarded before judgment was entered by the county court upon the award of the said arbitrators. As we have seen, it appears, that in a few months after said award was made, and in a less time after the injunction was awarded restraining the collection of the judgment in favor of the defendant Sutton against the plaintiff, and some time before the injunction was dissolved and the plaintiff's bill dismissed, the county court did enter judgment upon said award against said Sutton and the plaintiff his surety for $100.00 with interest from the 31st day of July, 1875, and the costs, to wit: $76.53, which is greater in the aggregate by several dollars than the said judgment of said Sutton against the plaintiff. All of this was before the circuit court, together with the fact of the insolvency of the defendant, Sutton, at the time plaintiff became his surety in said appeal-bond, and from thence continually afterwards, and at the time the circuit court dissolved said injunction and dismissed the plaintiff's bill.

It seems to me upon well settled principles of equity, which are fully supported by authorities cited *supra,* that the circuit court erred to the prejudice of the plaintiff in dissolving said injunction as well as in dismissing the plaintiff's bill. I think it was clearly right and proper to grant the injunction upon the facts stated in the bill, and that after the injunction was granted, it would have been error upon the facts appearing to dissolve the injunction before the county court entered judgment upon the award in favor of Barrett against said Sutton and plaintiff as his surety without indemnity to the plaintiff against any judgment, which might thereafter be rendered against him in said appeal-case as the

surety of said Sutton in said appeal-bond.    And after the
county court entered judgment upon the said award against
said Sutton and the plaintiff as his surety as aforesaid, the said
injunction should not have been dissolved, unless it had ap-
peared to the court, that the said Sutton or some person for
him, other than the plaintiff, had satisfied and discharged said
judgment of the county court and procured the plaintiff to be
released from any and every liability thereunder.    It might
have been different in this case, if the plaintiff had incurred
his liability as surety for Sutton after the assignment of the
said award in the case of his principal (Sutton) against him
and after notice of such assignments; but, as we have seen,
that question does not arise in this case; and it is therefore
not now decided.

It seems to me further, that it was the right of the plain-
tiff as the surety of Sutton in said appeal in equity and upon
principles settled in courts of equity under the circumstances
and facts appearing in this case to withhold the amount of
the said judgment of Sutton against him, including principal,
interest and costs, for his indemnity against the said Barrett
judgment against said Sutton and plaintiff as his security, as
far as it would go, and to apply the same to the payment of
the said Barrett judgment; and that when it shall be made to
appear to the court, that the plaintiff has paid the amount of
the said judgment of Barrett against Sutton and him inclu-
ding the principal, interest and costs, the circuit court should
perpetuate the injunction heretofore allowed at the costs of
the defendants.    Under the facts appearing in this case the
defendants, who are assignees of said Sutton, stand in no bet-
ter situation than Sutton would, if he had made no assign-
ment, the debt assigned not being negotiable in its nature or
character, the assignees respectively took their assignments
subject to the equities of the plaintiff as the surety of Sutton
as aforesaid.

Entertaining the foregoing views, the said decree of the
circuit court of the county of Wood rendered in this cause on
the 13th day of April, 1878, must be reversed with costs to
the appellant, William H. Mattingly, against the appellees,
Hiram Sutton, John G. McLuer and James M. Jackson; and
this cause must be remanded to the said circuit court for such

further proceedings therein to be had, as are in accordance with the principles settled in this opinion, and further according to the principles and rules governing courts of equity.

JUDGES GREEN AND JOHNSON CONCURRED.

DEBREE REVERSED.    CAUSE REMANDED.