# WHEELING.

## BEARD *v.* BEARD.

Submitted January 15, 1885.—Decided March 28, 1885.

1. Equity will enjoin the collection of a judgment in favor of an insolvent plaintiff, who is a judgment-debtor to the defendant, to the extent of such indebtedness. (p. 489.)

2. Money paid voluntarily with full knowledge of the facts under a mistake of law cannot be recovered. (p. 489.)

3. Money paid upon a judgment afterwards reversed may be recovered ; but where a defendant after suit brought and after a decree of reference to a commissioner not settling his liability, with full knowledge of all the facts, voluntarily pays a part of the demand against him, and a decree is afterwards rendered against him for the residue of the demand, which upon appeal is reversed, and the plaintiff's bill dismissed, he cannot recover the part so paid, because it was paid under his own mistake of law voluntarily with full knowledge of all the facts. (p. 494.)

The facts of the case are sufficiently stated in the opinion of the Court.

*R. F. Dennis* for appellant.

*A. F. Mathews* for appellees.

JOHNSON, PRESIDENT :

Abram Beard in February, 1884, filed his bill of injunction in the circuit court of Pocahontas county against John G. Beard and others, in which he alleged, that the defendants other than the sheriff of the county in 1883 recovered a judgment against him for $197.10 with interest and $64.00 costs; that in 1881 the defendants (except said sheriff) filed their bill against him in the circuit court of Greenbrier county, the object of which was to compel him as administrator of his deceased wife, Martha A. Beard, to settle his accounts as such, and to obtain a decree against him in their favor as distributees and next of kin of said Martha A. Beard for any sum that might be in plaintiff's hands as such administrator; that in said cause on November 25, 1881, a final decree was entered against him in favor of the plaintiffs as such distributees for $366.17; that from such decree he appealed, and the Supreme Court of Appeals reversed the said decree, holding that the personal funds in his hands as administrator of his deceased wife belonged to him as her husband and not to the plaintiffs in said suit; that while said last named cause was pending in the circuit court of Greenbrier county, the said court entered a decree referring the cause to a commissioner for an account, thereby deciding, as plaintifi was advised and believes, that he as administrator of his deceased wife was liable to the plaintiffs in said cause, and after said decree was entered, he on August 17, 1881, paid to Alex. F. Mathews, attorney for said distributees, the sum of $200.00 on account of what might be due from him to said distributees; that all said defendants except the said sheriff are insolvent; that he has a right to have credited on said execution the said sum and also his costs in the said suit in Greenbrier county and in the appellate court; and prayed that said execution then in the hands of said sheriff might be enjoined to the extent of the sums of money aforesaid. The injunction was granted.

To the bill the defendants demurred; and on March 13, 1884, in chambers the judge of the circuit court heard a motion to dissolve the injunction. The decree recites that the cause came on to be heard upon the bill and exhibits, the demurrer by all the defendants except the sheriff, the motion

to dissolve the injunction to the extent of the said $200.00, in the bill mentioned as having been paid by the plaintiff on the 17th day of August, 1881, to the defendants, and which said plaintiff in his bill insists shall be allowed him as an offset against the judgment, the defendants admitting and conceding that the plaintiff is entitled to the benefit of the two items of costs being $20.50 and $80.55 in the bill mentioned as credits upon or offsets against the said judgment. "Upon consideration whereof the Court is of opinion and decides, that the said $200.00 was paid under such a mistake of law, as that the said plaintiff is not entitled to relief therefor, and that he can neither recover the same directly nor have the benefit of it as an offset to said judgment; and it is therefore ordered that the said motion be sustained, and said injunction to the extent aforesaid of said $200.00 be dissolved, and that the said defendants be authorized to enforce the collection of the execution in the bill mentioned subject to said admitted credits of $20.50 and $80.55, and the question as to the cost of the suit is reserved to be determined at the final hearing of the cause."

From this decree the plaintiff appealed.

The decree of reference mentioned in the bill and exhibited therewith is as follows: "The subpœna in this cause having been returned executed upon the defendants, upon motion of the plaintiffs it is ordered that the cause be referred to James Withrow, one of the commissioners of this Court, with instructions to take, state and report to the next term of this Court an account of the administration of the defendant, Abraham McBeard, upon the estate of Martha A. Beard, deceased, showing what estate or funds belonging to said estate have come or should have come to his hands, what disbursments have been by him properly made, and what balance, if any, remains in his hands or for which he is liable, still due to the estate of his said intestate, any matter to be specially stated, deemed pertinent by himself or required by any party, but before executing this order the said commissioner shall give personal notice for ten days of the time and place when and where he will do so to all the parties, or to their attorneys, which shall be equivalent to said personal notice, and the clerk of this Court is directed

to convene in the manner prescribed by law the creditors of said Martha A. Beard to prove their debts before said commissioner."

For a full statement of the cause, in which this order was made, reference is made to *Beard et al* v. *Beard et als*, 22 W. Va., 130. By that statement it will appear, that "the summons to answer the bill was served and a few days thereafter at the June term, 1881, without any written notice that such motion would be made, before the necessary time had elapsed for taking the bill for confessed, the circuit court on motion referred the cause to a commissioner," &c.

If the plaintiffs in said suits owed the defendant, Beard, the $200.00 and were insolvent, as they admitted themselves to be in the demurrer to the bill in this cause filed against them by said Beard, and they were seeking to recover from him a larger amount on judgment and execution against him, he would clearly have the right to enjoin the collection to the extent of the $200.00, (*Maltingly* v. *Sutton*, 19 W. Va. 19,) and would not be turned over to an action of *assumpsit* against them to recover the $200.00. The question is: Did they owe him the money, and would he have been entitled to recover it in an action of *assumpsit?* It is too well settled in Virginia and in this State to now be controverted, that when one voluntarily pays money to another with full knowledge of all the facts but under a mistake of law, he can not recover it. (*Mayor of Richmond* v. *Judah*, 5 Leigh 305 ; *Haigh* v. *Building Association*, 19 W. Va. 792; *Transportation Company* v. *Sweetzer, supra*, p. 434.) It is also well settled, that where judgment has been recovered before a competent court, the party paying that judgment can not recover the money in another action, while the judgment remains in force. (*Brannon* v. *Bacon*, 1 Root 210 ; *Morton* v. *Chandler*, 7 Me. 45 ; *Loring* v. *Mansfield*, 17 Mass. 394; *Carter* v. *Canterbery*, 3 Conn. 461; *Honor* v. *Fish*, 1 Pick. 439 ; *Peck* v. *Woodbridge*, 3 Day 36 ; *Wilbur* v. *Sproat*, 2 Gray 431 ; *Coff* v. *Curtiss*, 8 Johns 470 ; *White* v. *Ward*, 9 *Id.* 232 ; *Job* v. *Collier* 11 Ohio 422 ; *Reskham* v. *Brown*, 4 Hump. 174 ; *Broughton* v. *McIntosh*, 1 Ala. 103.) It is equally well settled, that where money has been paid on a judgment, which is afterwards reversed, the money so paid may be recovered. (*Hanover* v. *Barrett*, 2 Root.

156; *Duncan* v. *Kirkpatrick*, 13 S. & R. 292; *Sturgis* v. *Allis*, 10 Wend. 354; *Duncan* v. *Ware*, 5 Stew. & P. 119; *Green* v. *Stone*, 1 H. & J 405; *Clark* v. *Pinney*, 6 Cow. 297; *Dennett* v. *Nevers*, 7 Mo. 399; *Raun* v. *Reynolds*, 18 Cal. 275; *McDonald* v. *Napier* 14 Geo. 89; *Stevens* v. *Fitch*, 11 Met. 248; *Mayhew* v. *Kellogg*, 24 Wend 32; *Bank of the United States* v. *Bank of Washington*, 6 Pet. 8; *Paulling* v. *Watson*, 26 Ala 205.) The reason, on which this well settled law is founded, is, that the money so paid was paid by mistake of law. The mistake of law, which authorizes the recovery of money paid thereunder, is the mistake of the party paying it. But when paid under a judgment of a competent court, until such judgment is reversed, it must be regarded as paid under the law; but when the judgment is reversed, it is then a nullity, and the matter stands as if no judgment had ever been rendered, and not having been paid under mistake of law by the party paying it may be recovered.

In some of the cases above cited property was levied on under executions; in some real estate was sold; in some the parties paid after judgment and before execution; in some the question was raised, whether the party who actually received the money should be sued or the plaintiff in the action or suit; in some the question arose as to what was the remedy, whether an order of restitution in the same suit or action, or a *scire facias*, or whether it could be recovered in an action of *assumpsit*; but in none of the cases was it doubted, that the party paying the money under an order, judgment or decree was entitled to recover it in some mode. In none of the cases was it paid under a decree settling the liability of the defendant and referring the cause to a commissioner for an account. In these cases the right to receive the money is not made to depend on the fact, that the party was bound to pay it to prevent his lands or goods from being sacrificed under a forced sale. The principle underlying these decisions is, that, if the money has been paid by order of a court, and that order being reversed is as if it never existed, the party not having therefore paid under a mistake of law may recover his money.

To which of the foregoing class does the plaintiff belong? It cannot be pretended, that he is in the second class, because

the money was not paid under such a judgment or decree, as is there described. Is he protected under the third class? Did he pay his money under the operation of a decree, which has been reversed? If he did, then he did not pay it under a mistake of law and can recover it. It is clear, that he did not pay it under an appealable decree. He paid it after the decree of reference and before his appearance in the suit. There was no decree rendered against him, under which payment of money could be enforced. In fact it had not yet been ascertained by the court, how much he owed, or whether he owed anything. The decree of reference settled nothing; it could not be said to have settled the principles of the cause. Such a reference under our statute could have been made in vacation. The order of reference does not pretend to decide, that the defendant was liable to pay anything to the plaintiff. The court had not yet determined, to whom the personal estate of Martha A. Beard should be distributed. The order directed the creditors to be convened, and it might be that the whole estate would be required to satisfy their demands, and that there would be nothing left to distribute. The order required the commissioner to state an account " showing what estate or funds belonging to the said *estate* have come or should have come to his hands, what disbursements have been by him properly made, and what balance, if any, remains in his hands, or for which he is liable, still due to the *estate* of said intestate," &c. There is certainly nothing here, which decides, that he was liable to pay any money to the plaintiffs. If the report showed it would require all the funds to pay the creditors, the plaintiffs would have received nothing. The bill, it is true, claims that there were funds in his hands, to which the plaintiffs were entitled as the distributees of defendant's intestate. But the bill was not taken for confessed, and the court did not decide, that the plaintiffs were entitled to receive anything. Such an order could afterwards be properly disregarded by the court without bill of review or motion for rehearing.

In none of the cases, which we have examined, has it been held, that, where money has been paid after suit brought, it could be recovered, except in cases where it was paid after a decree or judgment requiring it to be paid had been entered

by the court, and had been reversed on appeal or writ of error. We have found no case, in which it has been held, that, where after suit brought the money had been voluntarily paid, before a judgment was rendered requiring it to be paid, it could be recovered, even if the judgment were afterwards reversed on writ of error. It seems to us, that it makes no difference, whether he paid the money before suit brought or after, if he pays it under his own decision of the law, and not under the decision of the court. In either case he pays it under a mistake of the law.

In *Brisbane* v. *Dacres*, 5 Taunt. 152, Gibbs, judge, said: " The party has his option, whether to litigate the question or submit to the demand and pay the money."

In *Brown* v. *McKinnally*, 1 Esp. 279, a party, who was sued for old iron sold and delivered, paid the sum demanded objecting at the time, that the iron was not such, as he contracted for, but was of an inferior quality and less value, and giving notice to the vendor, that payment was made without prejudice, and that a suit would be brought to recover the overplus thus paid. On his bringing such suit Lord Kenyon decided, that it could not be maintained, and said, that to allow it would be to try every question twice; that the same legal ground, which would entitle the plaintiff to recover in that suit, would have been a good defense to the suit brought against him by the defendant.

In *Hombt* v. *Richardson*, 9 Bing. 644, the plaintiff had paid a certain sum of money after action brought with knowledge of the facts, on which the demand was founded; and it was held, that he could not recover it.

In *Milnes* v. *Duncan*, 6 Barn. & Cres. 679, Holroyd, judge, said that money paid after legal proceedings were instituted could not be recovered, if there were no fraud in the party receiving the money. The same doctrine was recognized in *Duke de Cadoval* v. *Collins*, 4 A. & E. 858.

In *Forbs* v. *Appleton*, 5 Cush. 115, it was held, that a payment of money in order to prevent the obligee in a bottomry bond from enforcing the same by taking possession of the vessel, is not a compulsory but a voluntary payment, which, if the money demanded is not due, does not give the debtor a right to recover it, although he declares at the time of pay-

ment, that he makes it under coercion and intends to reclaim the money by action. Dewey, judge, said : " The present case, looking at the facts agreed, seems to present nothing beyond the ordinary case of a voluntary payment of money to avoid a law-suit. The party demanding the money had not the actual possession of the vessel, which was the subject of the bottomry bond, and could not proceed further with the levy upon the same by means of any process in the nature of an execution or warrant of distress. The proceeding against the vessel, although a proceeding *in rem* and authorizing a sequestration of the vessel, was yet one easily discharged by making a deposit of money or giving proper security to pay such demand and all costs, if the same should be duly established before the proper tribunal. A threatened law-suit is not that species of duress, which will authorize the party to recover . back money voluntarily paid on an illegal claim."

In *Benson* v. *Monroe*, 7 Cush. 125, it appeared, that a vessel arrived at Boston in 1847 with alien passengers on board ; after the passengers were landed, the master refused to pay the head-money of two dollars for each of one hundred and forty passengers demanded by the superintendent of alien passengers under the statute of 1837, chapter 238, section 3, which had by the Supreme Court of Massachusetts been declared constitutional and valid. Whereupon the overseers of the poor commenced a suit (under the statute, chapter 46, section 28, and statute of 1837, chapter 238, section 6), against the owners of the vessel to recover the penalty of $200.00 for each passenger, and attached the vessel in the sum of $30,000.00. The owners thereupon paid the head-money demanded and costs under protest and with notice that they intended to sue to recover it. The statute of 1837 was afterwards on writ of error to the Supreme Court of Massachusetts in the case, in which said statute was decided to be constitutional, held by the Supreme Court of the United States unconstitutional and void. (7 How. 283.) It was held, that the owners could not maintain an action to recover the money so paid. This seems to be a great hardship, but Metcalf, Judge, said : " The Court deem this a plain case. It is an established rule of law, that if a party with full knowledge

of the facts voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he cannot recover back the money as paid by compulsion, unless there be fraud in the party enforcing the claim and a knowledge that the claim is unjust. And the case is not altered by the fact that the party so paying protests, that he is not answerable, and gives notice that he shall bring suit to recover the money back. He had an opportunity in the first instance to contest the claim at law. He has or may have a day in court. He may plead and make proof that the claim on him is such that he is not bound to pay."

So in this case Beard should have contested the claim, before he paid a part thereof, as he did afterwards; and if he had paid nothing, until the court on such contest had entered a decree against him for the money, and it had then been paid, and the decree had afterwards been reversed on appeal, he could recover the money. But, as we have seen, he did not do this, but before decree settling his liability—with a full knowledge of all the facts—he voluntarily paid the $200.00. He paid it under his own mistake of law and cannot recover it. Suppose he had paid the $200.00 before suit was brought, and he had contested the residue, and the decree had been reversed, would it be contended that in a suit to recover the money, which he had paid under the said decree, he could include the $200.00 paid before suit brought under a mistake of law? It does not in our opinion change the matter, when he pays it after suit brought under his own mistake of law. This is a hard case, because the plaintiffs in the former suit are not in conscience entitled to the money. But we can not in order to relieve the hardship, set a precedent, that will unsettle authority and do vastly more harm than good. The plaintiff in this case falls within the first class, is one of those, who with full knowledge of all the facts pays money under a mistake of law, and can not therefore recover it.

The order dissolving the injunction must be affirmed.

AFFIRMED.